May I proceed your honor? Thank you. Florence Brummer on behalf of Anders Rosenquist's office. We're from Arizona and we're court-appointed on this case. This is a case regarding the officers being overzealous. Before or after your client started shooting at them? Before. And thank you for pointing that out and asking that. There was, they were overzealous before. As the court knows, the officers were at the end of a long shift. They were hungry. They went out into the desert, which I always thought was sort of a weird place to decide to have dinner, but that's where they went, with their bucket of chicken. And they were surprised to see a car on the side of the road and people in it. And the jury made a mistake in this case. I would not have found my client guilty because there was significant problems with the evidence in this case. And a lot of the problems were brought forth actually as part of the government's evidence. Officer Marquez claimed that he was giving Garcia verbal commands when he exited the car. But there was not a loudspeaker used to give these commands. He did not put on his siren or his overhead blue and red lights. And the lights are really the biggest problem in this case. If you're an officer and you want people to know you're an officer, but your lights are the easiest thing to put on. How did your client's co-defendant, I don't know if she was charged or not, but the woman, his girlfriend, yeah, I mean, how was it that she was able to figure out that the police had arrived as soon as their headlights and searchlights illuminated the stolen car in which they were sleeping? She had testified that she didn't know exactly that they were, she was calling them the cops, that she didn't know that they were the cops. Didn't she wake him up by saying the cops are here? At which point they both broke and ran? He did. She didn't. So what difference does it make whether they turn their lights and sirens on if he was running because he thought the police had arrived and the jury obviously so credited her testimony when they convicted him? Right. The difference is that when he first starts running, he actually, he testified also, Your Honor, and he had testified, he was pretty sure that it was the police when he first started running. And, but while he was running, it was odd because lights didn't come on. He doesn't hear anything. He doesn't know who's following him. And then he, the second car testified that he did activate his emergency lights while he was pursuing your client through the desert. His testimony was odd. He had, the jury should have disbelieved it and you want us to overturn that credibility determination that the jury decided against you? Yes, I do. Okay. And by what authority do we do that sitting as appellate judges not having the opportunity to see the beady eyes and the sweaty palms? Sure. Please look back at Officer Sherwood's testimony because Officer Sherwood testifies to a couple different things. When he comes to trial that day and testifies, suddenly he has this recollection of the lights being on. Although he never put it in his report, he never told it to the FBI agent who was investigating the case. And then suddenly when he goes to trial, he has this recall that these lights are on. You were trial counsel? I was not trial counsel. Okay. Did defense counsel try to impeach him on all those salient points? Yes. So the jury heard all that? Yes, the jury did hear it. They still believe the officer's testimony? Yes. Which leads me into issue two because this case was obviously a case about credibility. So every single factor that changes the credibility of the parties needs to be carefully looked at. And in issue two, you asked us to declare as a matter of due process that the inconsistencies in the evidence were so substantial that we must declare that this was inherently an unfair result based on the evidence. Yes, Your Honor. And what's your best case to support that determination? Looking at the facts. Where by your own declaration this was a credibility contest? Well, the number one is the facts that were presented to the jury. I'm asking for a case citation. What power do we have as an appellate court to make the declaration that you want us to make on the basis of this record that the trial was so inherently unfair based on the inconsistencies in the evidence that we must reverse and remand for a new trial to be at? You're just making a straight-up sufficiency argument, aren't you? Under Jackson? Yes. But it seems to me that if we go that direction, if you're just analyzing it through that, because I don't think there's any other way to approach your argument, at least that I can see, all you're talking about are inferences. And at this stage, all inferences are drawn through the prosecution. Can you give me an example in the facts of the case that would not require us to draw an inference but would support your argument on sufficiency? Yes. Marquez himself says that he was he never announced that he was a police officer. Instead he assumed Garcia would know because if he's being chased through a field, he should know it's a police officer. But Garcia testified he assumed he knew. He assumed he knew initially, but as the chase progressed and he's not hearing any commands or seeing any lights, he's starting to think something very odd is going on. And as you recall, Garcia testified that he was shot at, and that's when things really started to go wrong, where he definitely thought it was not a police officer at that point. And that's why I also asked the court to look carefully at issue two in this case, because Garcia was robbed of his presumption of innocence There was the testimony given where it was discussed where Garcia was in custody. And on page 21 of the government's brief, they put the sites from the transcript about what happened. At first the government's talking about the telephone communication that was apprehended. And it says it was obtained from Garcia, and then it goes on to say, and what does CCA mean? And this is a jail call, correct? And all of this comes out to the jury. And so that was a significant problem, and we briefed it. I see that I'm running a little bit short on time, so if I could briefly touch on issue three on the sentencing and reserve some time for rebuttal. Issue three is also very important, because the factor that I think the court needs to look at the most is the enforcement enhancement that Garcia received, because the court found that Marquez, that Garcia knew that Officer Marquez was a law enforcement officer. This finding was not made by the jury. The finding was not made by the jury. Let me ask you about that. Had your client been charged under, I believe it's 111 or 115, I can't remember which the section is, Title 18, attempted murder of a federal law enforcement officer, our case law says that it is not even an element of the offense that the defendant be shown to have known that the victim was a law enforcement officer. By analogy, if that's the case, why is it improper for the district court to make that finding during the sentencing proceeding, where there was testimony that the jury credited that the defendant knew that he was being pursued by the police? Well, we had cited a case from the Sixth Circuit, United States v. Mills, which is directly on point, that says that for that sentencing finding, sentencing enhancement to happen, that the court needs to have the jury make the finding that it's a law enforcement officer. That's not responsive to my question, though. Well, I don't think it can't, because he wasn't charged with it, so I don't think it can be. But if that's the state of the law, if you can be convicted of assaulting a federal law enforcement officer without knowing that the victim is, in fact, a law enforcement officer, then where is the constitutional error here in the district court making a determination at sentencing that the victim was a law enforcement officer? Well, it's a sentencing issue that the court should be finding, and based on Booker, I'm sorry, that the jury should be making. And based on Booker, the jury should be making. So I don't think, and maybe I'm not understanding the question, but I don't think it's the same thing, because it's not the same statute, and there's not the element that he's a law enforcement officer in it. But it's a sentencing enhancement, right? It's a question of where within the maximum statutory range the punishment should be set. And the jury should be making that finding. It's not in the indictment, and it's not in the, or it shows up in the indictment, but it doesn't show up in either the jury instructions or the verdict form, and it should have. Thank you, Counsel. Good morning. May it please the Court, Linda Boone on behalf of the United States. Marcus Garcia's defense was totally based on his credibility, and frankly, he blew it by testifying before the jury that he admittedly asked his friend Twyla to lie in court for him, and also by admitting that he had lied to his friend Twyla. He did, in fact, think, when he first started to run away from the car and before any shots were fired, that, yes, indeed, that was the police. That was, if there was any question in the jury's mind about the government's evidence, that, no doubt, was a turning point in their minds. If this Court would consider this, the Rule 20 of the Constitution, I think it would be helpful to consider the Rule 29 motion. There must be a deferential review here, because, first of all, the defense counsel only made a very perfunctory motion with absolutely no argument, and the defense counsel never renewed it at the close of the evidence. There was no challenge to the first two elements, only to the fact of the specific intent to do bodily harm. The defendant's testimony was contradicted by two police officers who both testified that he fired first. Marquez was directly in the line of fire, and Sherwood, by that time, had come up and observed the muzzle flashes. So he, in fact, saw the defendant firing. Twyla, the friend of the defendant, didn't see the muzzle flashes. She was the one who fired first, but she was able to testify that, yes, indeed, she knew it was the police by those lights. And, by the way, just a few days before this incident, the defendant had told her that if he ever got into an altercation with the police, he was going to shoot them. He was going to shoot them and or the police car, because he testified, she testified to both, because he wanted to be shot and not go back to jail. He hoped that they would shoot him, the police would shoot him. The jury had a right to infer from these statements of the defendant and from his actions that he, in fact, had the intent to harm. And we're turning to the sentencing issue. I think we have your argument on the merits of the sufficiency in hand. Certainly. I'm concerned in this record about Judge Silver's findings on that. She starts off by saying that it doesn't matter whether or not he knows it's a police officer to impose the enhancement, which I think is incorrect. Your Honor, she does say that. However, she also specifically says that she finds that there were facts, and she remembers them. She remembers the trial, that there were facts that indicate that he did know. Well, she says, I think there are facts. She says, I'm not finding you didn't know. I think there are facts to indicate that you did. Yes, Your Honor. But independent of that, there is an upward adjustment because he was, I presume, talking about an officer. Yes. It seems to me that she just has the law wrong. Your Honor, that statement may be wrong. However, under Booker, the court does still have the authority to make findings of facts to determine the guidance. But she didn't make the finding. I guess I share that concern. I'm sorry, Your Honor. She didn't expressly make the finding. I mean, she may have the authority to do so, but, in fact, she didn't. Oh, Your Honor, I believe that she did, that, in fact, the judge said that, I am not finding that you didn't know. I remember the trial. I find that there were facts that you did know. Because she, you know, there was a discussion there where she said, you're saying you didn't know, and maybe... Assuming that she didn't make that finding expressly, and I guess that you disagree how to interpret her words, I didn't see in your brief the government arguing that that was harmless error. Is it your view that that would be her failure to make a finding? Would it in any event be harmless? Your Honor, we would say that it's harmless error because the statements of the court could be interpreted that she was making. The finding, if not specific, and we make that argument because if you consider, for instance, the case of United States v. Mix, where we're told that the court need not specifically mention each Section 3553A factor, but can, if you find something from which you can infer those factors, I would say that this is... I'm not sure you're addressing Judge Akuta's question precisely. I think her question was, assuming that, for the sake of argument... If we, on this record, determined that she didn't make a finding, even given all the inferences, where does that leave us? Did we send it back and have her make the finding, re-sentence? No, Your Honor, I believe that this Court can find it harmless error by looking at the facts in the record and making a determination, because the jury found that he was guilty specifically of count one, and count one in the indictments that he was guilty of. And the indictment specifically said, Officer Sean Marquez, as I pointed out. So I believe this Court... Well, I didn't say he had to know. I mean, in the indictment, the officer just identified as officer so-and-so as a person. It doesn't necessarily... He knew he was an officer. That's not in the indictment, is it? Your Honor, the indictment, it doesn't say that he was an officer. It identifies him as officer. And this Court must respect the jury's exclusive privilege. And I believe that the jury did not believe the defendant's versions of the facts, but believed what the two police officers and the friend Twyla, the government's witnesses, had testified to. I don't have the jury verdict form handy. Can you tell me what the jury was instructed, or if there was a jury verdict form? There was no... There was a general verdict form? There was a general verdict form. There was no specific finding for the jury to make that he was an officer. That's correct, Your Honor. Before them, did they not? They were given a copy of the indictment? I can count one. And, of course, it was all over the record before the jury that this was a police officer. There's no doubt at all. The question is whether or not there's a jury finding that the defendant knew he was an officer at the time, or a finding by the court to that effect. And the government's argument is that the verdict of the jury supports that they did not know that he was an officer. They did believe he was an officer, and they did believe that defendant knew he was a police officer. And the government argues further that the district court's language did indicate that she was making a finding that the jury found he was an officer, believed he was an officer, and the defendant had reason to know and did know that he was an officer. And there is nothing to contradict that other than the defendant's testimony, and obviously the jury found that he was an officer. The jury found that he was not credible, Your Honor. Would the court like me to address the other sentencing issues? One very important point I think that this court should consider is the challenge to the factor of mental health. First of all, it is absolutely untrue that a defendant's allegation that the court did not consider the mental health. The court considered and rejected the mental health conditions of the defendant. The court specifically said that if the court could glean from this information presented to it at sentencing that the defendant had a mental illness, but it did not, the reports did not say that, then it would consider an adjustment. However, it found that this, the mental conditions of the defendant did not justify an adjustment and did not justify what he had done, specifically shooting under this situation and the way that the defendant shot, totally shattering the windshield, indicating that he specifically intended to harm the driver behind. Your Honors, my time is nearly up. Is there any other point that you would specifically like me to address? Any further questions? Thank you, counsel, for your argument. Your Honors, I have no time left, so unless you have any other questions, that's the conclusion of my argument. Thank you for your argument.
judges: Thomas, Tallman, Ikuta